UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

RONALD ANDERSON,

                     Plaintiff,

      - against –

NEW YORK CITY DEPARTMENT OF FINANCE,

                 Defendant.

-------------------------------------------------------------------x

**Case No.:**

**VERIFIED COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff RONALD ANDERSON, by and through his attorneys, White, Hilferty & Albanese, P.C., hereby complains of Defendant, upon information and belief as follows:

### NATURE OF THE CASE

1.    Plaintiff brings this action alleging that Defendant violated Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 1981 *et seq.*, 42 U.S.C. § 2000 *et seq.*, and the New York State Human Rights Law, N.Y. Exec. Law 290. *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin Code 8-101, *et seq.* and seeks damages to redress the injuries he suffered as a result of being discriminated against on the basis of his race and unlawfully retaliated against.

### JURISDICTION & VENUE

2.    Jurisdiction of this Court is proper under 42 U.S.C. § 1981 and 1983 *et seq.,* 42 U.S.C. § 2000, *et seq.*, and 28 U.S.C. §§ 1331 and 1343.

3.    The Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

4.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL REQUIREMENTS

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received from the EEOC a notice of right-to-sue, dated June 3, 2019.

7. Plaintiff has filed this action within 90 days of receipt of said notice of right-to-sue.

## THE PARTIES

8. At all times relevant, Plaintiff RONALD ANDERSON ("Mr. Anderson") is an African-American male residing in Brooklyn, New York.

9. At all relevant times, Defendant CITY OF NEW YORK, DEPARTMENT OF FINANCE ("Defendant") is a revenue service, taxation agency and recorder of deeds of the government of New York City, with its headquarters located in New York, New York.

## MATERIAL FACTS

10. Plaintiff is an African-American male.

11. On December 10, 2001, Defendant hired Mr. Anderson as a City Tax Auditor in the Real Property Transfer Tax ("RPTT") Division.

12. As set forth in greater detail below, Defendant subjected Mr. Anderson to unlawful discrimination based on his African-American race throughout his employment. Additionally, Defendant subjected Mr. Anderson to unlawful retaliation due to his engagement in protected activity when he complained of the racial discrimination and harassment to which he endured.

13. During Mr. Anderson's employment, his supervisor Lincoln Williams frequently commended Mr. Anderson for performing exceptionally well. Williams assured Mr. Anderson that he would do very well in the Department.

14. In 2005, Respondent transferred Williams to another department. Subsequently, Defendant assigned Thomas Connors as Mr. Anderson's supervisor. When Mr. Anderson met Connors, he stated that Mr. Anderson was "The despised man in the department," and that he must work hard to make up for that deficiency.

15. Subsequently, Mr. Anderson submitted a complaint to Equal Employment Opportunity ("EEO") Officer Anne Long regarding Connors' statements. Long recommended that Mr. Anderson "leave the matter alone" and stated that Defendant did not subject him to any form of discrimination warranting reprimand.

16. During this time, after a female customer harassed Mr. Anderson over the phone, Connors directed Mr. Anderson to meet with a Finance Advocate. Connors then asked for Mr. Anderson's resignation; however, Mr. Anderson refused. Connors then arranged for a hearing with the Office of Administrative Trials and Hearings ("OATH") regarding Mr. Anderson's refusal to resign.

17. Subsequently, Connors informed Mr. Anderson that a male customer called to complain about Mr. Anderson's conduct. Mr. Anderson reviewed his records and noticed that he never encountered the man's case. Upon information and belief, Connors fabricated the complaint in retaliation for Mr. Anderson's complaint to EEO and refusal to resign from his position. As a result of Connors' discriminatory and retaliatory treatment, Mr. Anderson became physically ill and sought treatment at Mount Sinai Beth Israel Hospital.

18. During the OATH hearing, Mr. Anderson was represented by a Union Attorney. Connors admitted at the hearing that senior management arranged for Mr. Anderson to be reprimanded. Defendant's attorney also admitted that Defendant never before terminated an employee for attempting to manage an angry customer. It was revealed that senior

management at the Department attempted to use an angry female customer's call as an excuse to target Mr. Anderson. Nevertheless, as a result of the hearing, Defendant suspended Mr. Anderson for 45 days, which resulted in a total loss of 59 days without pay.

19. Upon his return to work, Connors confronted Mr. Anderson and threatened, "It's not finished yet." Mr. Anderson then replied, "I heard what you said," to which Connors stated, "Do you have any evidence that I said it?" Mr. Anderson promptly drafted a memorandum to the Assistant Commissioner regarding Connors' conduct.

20. In 2007, in further retaliation against Mr. Anderson for reporting Connors' discriminatory conduct, despite his exceptional performance report grade, Defendant transferred him to an Auditor I position in the Refund Department.

21. Deputy Commissioner Hyman observed all employees working at the Auditor I level and concluded all the employees performed the same work. Accordingly, Defendant promoted all Auditor I level employees to an Auditor II position, except for Mr. Anderson. Subsequently, Mr. Anderson emailed Hyman about Defendant's failure to promote him; however, Hyman failed to respond. Hyman's refusal not to promote Mr. Anderson was because of his African-American race and in retaliation for his complaints of racial discrimination. To date, Defendant refused to promote Mr. Anderson to an Auditor II position.

22. Defendant then transferred Mr. Anderson to the Industrial Commercial Incentive Program, despite placing him in a senior position with more responsibility. Defendant failed to grant Mr. Anderson an increase in pay or update his employment status.

23. As a result, Mr. Anderson filed a grievance with his union. At the grievance hearing, Mr. Anderson's Department Supervisor testified that Mr. Anderson was a very knowledgeable employee that required minimal supervision.

24. After the hearing, Defendant retroactively compensated Mr. Anderson for the eight months he worked in the Incentive Program and transferred him back to the Refund Department. Notably, Defendant assigned a Caucasian employee to Mr. Anderson's prior position.

25. Defendant's incessant transfers of Mr. Anderson were based upon his race and in retaliation to his EEO complaint.

26. Thereafter, Mr. Anderson again raised his concerns with EEO Officer Long; however, Long advised Mr. Anderson that Defendant would do nothing for him. Nevertheless, Mr. Anderson continued to diligently perform his job duties.

27. In 2012, Defendant assigned Mr. Anderson to work on a special project regarding non-profit companies. Director Theodore Oberman and Assistant Director Jean stated that Mr. Anderson was the lead producer of the project. Nevertheless, Defendant refused to issue Mr. Anderson a salary increase or promotion.

28. Shortly thereafter, Mr. Anderson applied for several positions that became available in the ICIP Department. Jean informed Mr. Anderson that Defendant already filled the positions with other candidates. Director of the Refund Department Grace Wong interviewed employees individually for these positions and told Mr. Anderson that she admired his work. Further, Wong represented to Mr. Anderson that she would speak to senior management to recommend that he be promoted; however, Wong advised Mr. Anderson that if Defendant failed to promote him, she would not do anything further to assist him.

29. Subsequently, Defendant refused to promote Mr. Anderson and continued to employ him as an Auditor I. Defendant filled the positions with individuals, all of whom did not possess sufficient qualifications or experience, while Mr. Anderson possessed ample experience and a Master's Degree. Defendant's actions of promoting less-qualified candidates over Mr. Anderson despite his qualifications further evidence Defendant's discriminatory and retaliatory animus against him.

30. In 2014, Kevin Ma was promoted to Deputy Director of the Refund Department, who lacked knowledge and experience in the area. Accordingly, Defendant required Mr. Anderson to perform Ma's duties without additional compensation or promotions. Mr. Anderson then filed a grievance with his union and contacted EEO; however, neither the union nor EEO assisted Mr. Anderson. Defendant then transferred Mr. Anderson to the Payment Operations Department in retaliation for his complaint to EEO and the Union.

31. Thereafter, Williams informed Mr. Anderson about an opening in RPTT and recommended Mr. Anderson for the position. The following day, Williams advised Mr. Anderson that senior management "point blank" refused to give Mr. Anderson the position. Defendant's denial was based upon Mr. Anderson's African-American race and in retaliation to his previous EEO complaints.

32. In September 2016, Assistant Commissioner Leslie Zimmerman and Manager Linda Levine began training employees on a new computer operating system. However, Defendant failed to provide Mr. Anderson with the same training as his fellow colleagues, which he reported to Levine. Levine became angry with Mr. Anderson and told other employees that Mr. Anderson "confronted her." Employee Zimmerman commented, referring to Mr. Anderson, "His friends don't talk to him anymore because of what he did."

Mr. Anderson did not reply and continued to perform his duties. Zimmerman and Levine refused to train Mr. Anderson on this system equally based upon his race and in retaliation to his previous EEO complaints.

33. From June 2017 through 2018, Defendant failed to compensate Mr. Anderson for the overtime hours he worked.

34. As of July 1, 2017, overtime opportunities required the approval of Zimmerman or Levine. Such method permitted Defendant to ensure that Mr. Anderson was denied overtime.

35. On July 26, 2017, at an office retirement party, in reference to Mr. Anderson's discrimination suit, Zimmerman stated, "Some want to go to a hotel, while some want to run to the bank."

36. On February 9, 2018, Leslie proclaimed to Mr. Anderson, "The commissioner told me not to expect any miracles."

37. On February 14, 2018, Leslie came out of her office, stood behind her Assistant Keith's office as well as Mr. Anderson's cubicle and laughingly stated, "That is blood money."

38. On February 20, 2018, Leslie and Keith attempted to photograph Mr. Anderson.

39. On February 26, 2018, Keith walked out of his office and stated, "What are you doing here mother fucker?" Keith then turned to Mr. Anderson and stated, "How are you Sir?"

40. The racial discrimination and retaliation to which Mr. Anderson is subjected by Defendant remains ongoing.

41. Defendant treated Plaintiff differently as compared to similarly-situated non-African-American employees. Specifically, Defendant discriminated against Plaintiff on the basis of his African-American race. Further, Defendant retaliated against Plaintiff following his engagement in protected activity when he complained of the discrimination to which he

was subjected. Specifically, Defendant suspended Plaintiff and subsequently transferred him to another location, which caused him to lose overtime opportunities.

## FIRST CAUSE OF ACTION AGAINST DEFENDANT
### (DEPRIVATION OF RIGHTS IN VIOLATION OF 42 U.S.C § 1981)

42. Plaintiff repeats and realleges every paragraph above as if said paragraphs were more fully set forth herein at length.

43. Plaintiff is a member of a racial minority.

44. Defendant, and/or its agents, intended to discriminate against Plaintiff on the basis of his race.

45. Plaintiff is qualified for his position as he maintained his employment since 2001.

46. Plaintiff is a member of protected classes as an African-American employee.

47. Defendant took adverse action against Plaintiff as detailed above in the material facts section.

48. As a result of his race, Defendant including but not limited to: failed to provide Plaintiff the opportunity to apply for an Auditor II position and therefore hindered his ability to be promoted; wrongfully suspended Mr. Anderson; and denied Mr. Anderson the same training it afforded to other employees.

49. Defendant interfered with Plaintiff's right to contract the sale of his labor by denying him the equal opportunity to apply for a position and advance within his employment, denying him the same training it afforded to other comparators, and by suspending Mr. Anderson without just cause.

50. Defendant's discrimination concerned one of the activities protected by the Civil Rights Act of 1964, 42 U.S.C. § 1981.

51. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the Civil Rights Act of 1964, 42 U.S.C. § 1981, Plaintiff suffered and continue to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT
### (IN VIOLATION OF § 1983)

52. Mr. Anderson repeats and realleges every paragraph above, as if fully set forth herein.

53. Defendant's discrimination concerned one of the activities protected by the Civil Rights Act of 1964, 42 U.S.C. §1983.

54. Mr. Anderson is a member of protected class, namely, Mr. Anderson is African American.

55. Mr. Anderson performed his responsibilities in a satisfactory manner since 2001, evincing that he is qualified for the position.

56. Defendant intended to discriminate against Mr. Anderson on the basis of his race by including but not limited to: failing to provide Plaintiff the opportunity to apply for an Auditor II position and therefore hindering his ability to be promoted; wrongfully suspending Mr. Anderson; and denying Mr. Anderson the same training it afforded to other employees.

57. Defendant engaged in custom that denied Mr. Anderson his equal protection constitutional rights.

58. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the Civil Rights Act of 1964, 42 U.S.C. §1983, Mr. Anderson suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence,

9

emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

### THIRD CAUSE OF ACTION AGAINST DEFENDANT
### (DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000)

59. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

60. Plaintiff claims Defendant violated Title VII of the Civil Rights Act of 1964, as these titles appear in volume 42 of the United States Code, beginning at Section 2000.

61. Title VII of the Civil Rights Act of 1964, Section 2000e-2, Section 703 "Employer Practices" states: "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

62. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his African-American race.

63. Anderson is a member of protected class, namely, Mr. Anderson is African American.

64. Mr. Anderson his responsibilities in a satisfactory manner since 2001, evincing that he is qualified for the position.

65. Defendant subjected Mr. Anderson to adverse action by including but not limited to: failing to provide Plaintiff the opportunity to apply for an Auditor II position and therefore hindering his ability to be promoted; wrongfully suspending Mr. Anderson; and denying Mr. Anderson the same training it afforded to other employees.

66. An inference of discrimination can be made based upon the disparate treatment afforded to Mr. Anderson's counterparts that are not African-American.

10

## FOURTH CAUSE OF ACTION AGAINST DEFENDANT
### (RETALIATION IN VIOLATION OF 42 U.S.C. § 2000)

67. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

68. Title VII prohibits retaliation.

69. 42 U.S.C. § 2000e-3 provides:

   a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

70. Defendant violated this section as set forth herein.

71. Defendant engaged in an unlawful employment practice by retaliating against Plaintiff following his engagement in protected activity.

72. Plaintiff engaged in protected activity when he filed multiple complaints of discrimination on the basis of his race with EEO and his Union as detailed in the preceding paragraphs.

73. Defendant had knowledge of these complaints because Mr. Anderson filed with its internal EEO office and his Union.

74. Following Plaintiff's engagement in protected activity, Defendant engaged in adverse action against the Plaintiff, including but not limited to: failing to provide Plaintiff the opportunity to apply for an Auditor II position and therefore hindering his ability to be promoted; wrongfully suspending Mr. Anderson; and denying Mr. Anderson the same training it afforded to other employees.

## FIFTH CAUSE OF ACTION AGAINST DEFENDANT
### (DISCRIMINATION IN VIOLATION OF N.Y. EXEC. LAW § 296)

75. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

76. The New York State Human Rights Law, N.Y. Exec. Law 296 provides, in pertinent part: "It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

77. Defendant violated this section as set forth herein.

78. Mr. Anderson is an African American which qualifies him as a protected class.

79. Mr. Anderson's length of employment since 2001 establishes that he is qualified for his position.

80. Defendant subjected Mr. Anderson to adverse action by including but not limited to: failing to provide Plaintiff the opportunity to apply for an Auditor II position and therefore hindering his ability to be promoted; wrongfully suspending Mr. Anderson; and denying Mr. Anderson the same training it afforded to other employees.

81. An inference of discrimination can be made based upon the disparate treatment afforded to Mr. Anderson's counterparts that are not African-American.

## SIXTH CAUSE OF AGAINST DEFENDANT
### (RETALIATION IN VIOLATION OF N.Y. EXEC. LAW § 296)

82.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

83.    The New York State Human Rights Law, N.Y. Exec. Law 296 provides, in pertinent part: "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

84.    Defendant engaged in an unlawful employment practice by retaliating against Plaintiff.

85.    Plaintiff engaged in protected activity when he filed multiple complaints of discrimination on the basis of his race with EEO and his Union as detailed in the preceding paragraphs.

86.    Defendant had knowledge of these complaints because Mr. Anderson filed with its internal EEO office and his Union.

87.    Following Plaintiff's engagement in protected activity, Defendant engaged in adverse action against the Plaintiff, including but not limited to: failing to provide Plaintiff the opportunity to apply for an Auditor II position and therefore hindering his ability to be promoted; wrongfully suspending Mr. Anderson; and denying Mr. Anderson the same training it afforded to other employees.

## SEVENTH CAUSE OF AGAINST DEFENDANT
### (DISCRIMINATION IN VIOLATION OF N.Y.C ADMIN. CODE § 8-107)

101.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

102. New York City Administrative Code § 8-107 provides, in pertinent part: "It shall be unlawful discriminatory practice: (a) For an employer or an employee or agent therefore, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

103. Defendant engaged in an unlawful employment practice by discriminating against Plaintiff.

88. Mr. Anderson is an African American which qualifies him as a protected class.

89. Mr. Anderson's length of employment since 2001 establishes that he is qualified for his position.

90. Defendant subjected Mr. Anderson to adverse action by including but not limited to: failing to provide Plaintiff the opportunity to apply for an Auditor II position and therefore hindering his ability to be promoted; wrongfully suspending Mr. Anderson; and denying Mr. Anderson the same training it afforded to other employees.

91. An inference of discrimination can be made based upon the disparate treatment afforded to Mr. Anderson's counterparts that are not African-American.

## EIGHTH CAUSE OF AGAINST DEFENDANT
## (RETALIATION IN VIOLATION OF N.Y.C ADMIN. CODE § 8-107)

104. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

105. New York City Administrative Code § 8-107 provides, in pertinent part: "7. Retaliation. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person

because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter. The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment, housing or a public accommodation or in a materially adverse change in the terms and conditions of employment, housing, or a public accommodation, provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity."

106.    Defendant engaged in an unlawful employment practice by retaliating against Plaintiff.

107.    Plaintiff engaged in protected activity when he filed multiple complaints of discrimination on the basis of his race with EEO and his Union as detailed in the preceding paragraphs.

108.    Defendant had knowledge of these complaints because Mr. Anderson filed with its internal EEO office and his Union.

109.    Following Plaintiff's engagement in protected activity, Defendant engaged in adverse action against the Plaintiff, including but not limited to: failing to provide Plaintiff the opportunity to apply for an Auditor II position and therefore hindering his ability to be promoted; wrongfully suspending Mr. Anderson; and denying Mr. Anderson the same training it afforded to other employees.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A.  Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 1981, *et seq,* 42 U.S.C. § 2000, *et seq.,* the New York State Human Rights Law, N.Y. Exec. Law 290. *et seq.,* and the New York City Administrative Code § 8-101, *et seq* by discriminating against Plaintiff on the basis of his race and unlawfully retaliating against him;

B.  Awarding damages to the Plaintiff, resulting from Defendant's unlawful discriminatory and retaliatory actions against him and to otherwise make him whole for any losses suffered as a result of such unlawful employment practice;

C.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to him reputation in an amount to be proven;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, New York
August 23, 2019

Respectfully submitted,

J. Christopher Albanese
Nina A. Ovrutsky
*Attorneys for Plaintiff*
570 Lexington Avenue, 16th Floor
New York, New York 10022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

RONALD ANDERSON,

                     Plaintiff,

        -against-

CITY OF NEW YORK DEPARTMENT OF FINANCE

                  Defendant(s).
-----------------------------------------------------------------------X

**VERIFICATION**

     RONALD ANDERSON pursuant to the provisions of 28 U.S.C. 1746, declares the following under penalty of perjury that the foregoing is true and correct:

1. I am the Plaintiff herein.

2. I have read the foregoing Complaint and know the content thereof, that the same is of my own knowledge except as to the matters therein stated upon information and belief; and that as to those matters, I believe the same to be true.


Executed on the 12 day of August, 2019

*Ronald Anderson*
_____
RONALD ANDERSON

17