UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 4/21/2020

RONALD ANDERSON,

                Plaintiff,

        v.

NEW YORK CITY DEPARTMENT OF
FINANCE,

                Defendant.

No. 19-CV-7971 (RA)

MEMORANDUM
OPINION & ORDER

Plaintiff Ronald Anderson brings this action against Defendant New York City Department of Finance, alleging racial discrimination and retaliation under federal, state, and municipal law.  Now before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the motion is granted.

## BACKGROUND[1]

Plaintiff Ronald Anderson, an African American male, was hired by Defendant New York City Department of Finance in December 2001 "as a City Tax Auditor in the Real Property Transfer Tax ('RPTT') Division."  Compl. ¶ 11.  Plaintiff alleges that Defendant has subjected him to racial discrimination and unlawful retaliation since 2005.

In 2005, Plaintiff was transferred out of the RPTT Division and assigned a new supervisor, Thomas Connors.  Upon meeting Plaintiff, Connors allegedly told him that he, Anderson, was "[t]he despised man in the department" and "must work hard to make

---

[1] The Court draws the following facts from Plaintiff's complaint, *see* Dkt. 1, and accepts them as true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

up for that deficiency." *Id.* ¶ 14.  Afterwards, Plaintiff "submitted a complaint to Equal Employment Opportunity ('EEO') Officer Anne Long," but Long purportedly told him to "leave the matter alone." *Id.* ¶ 15.

Around this time, a female customer allegedly harassed Plaintiff over the phone. Connors responded by "direct[ing] [Plaintiff] to meet with a Finance Advocate" and "ask[ing] for [Plaintiff's] resignation." *Id.* ¶ 16.  Plaintiff refused to resign, leading Connors to schedule a hearing before the Office of Administrative Trials and Hearings ("OATH").  Before the hearing, "Connors informed [Plaintiff] that a male customer called to complain about [Plaintiff's] conduct." *Id.* ¶ 17.  Plaintiff disputes that he ever spoke with this customer and alleges that Connors "fabricated" this in retaliation of Plaintiff's EEO complaint and refusal to resign.  *Id.*  At his hearing before OATH, Plaintiff was suspended for 45 days, resulting in a loss of pay for 59 days.  *See id.* ¶ 18. Following his suspension, Connors told Plaintiff that "[i]t's not finished yet." *Id.* ¶ 19. Plaintiff later wrote to the Assistant Commissioner about Connors' conduct.

In 2007, Defendant was transferred to an Auditor I position in the Refund Department, which he alleges constituted "further retaliation against [him] for reporting Connors' discriminatory conduct." *Id.* ¶ 20.  Plaintiff asserts that everyone, except for him, working in an Auditor I position was promoted to an Auditor II position.  He e-mailed Deputy Commissioner Hyman about "[his] refusal not to promote [Plaintiff] because of his African-American race and in retaliation for his complaints," but never received a response. *Id.* ¶ 21.

At an unspecified time after that, Plaintiff was transferred to the Industrial Commercial Incentive Program.  According to Plaintiff, this was "a senior position with

more responsibility," but he was nonetheless not given "an increase in pay or update [to] his employment status." *Id.* ¶ 22.  Plaintiff thus filed a grievance with the union.  After a hearing on this matter, Plaintiff was "retroactively compensated . . . for the eight months he worked in the Incentive Program and transferred . . . back to the Refund Department." *Id*. ¶ 24.  He further notes that, after his transfer, "Defendant assigned a Caucasian employee to Mr. Anderson's prior position."  *Id.*  Attributing these transfers to racial discrimination and retaliation, Plaintiff "again raised his concerns with EEO Officer Long" but was advised "Defendant would do nothing for him."  *Id.* ¶ 26.

In 2012, Plaintiff was assigned to work on a special project about non-profit companies.  Although he was named "the lead producer of the project," Plaintiff alleges that he was denied "a salary increase or promotion." *Id.* ¶ 27.  Plaintiff then applied for several open positions in a different department.  The Director of the Refund Department, Grace Wong, allegedly told Plaintiff that she would recommend him for a promotion. Nonetheless, Plaintiff was later informed that the positions were already filled.  He asserts that "Defendant filled the positions with individuals, all of whom did not possess sufficient qualifications or expertise," despite the fact that he had "ample experience and a Master's Degree." *Id.* ¶ 29.

Plaintiff next alleges that Kevin Ma was promoted to be the Deputy Director of the Refund Department in 2014, even though Ma "lacked knowledge and experience in the area." *Id.* ¶ 30.  Plaintiff asserts that he was forced "to perform Ma's duties without additional compensation or promotions."  *Id.*  Plaintiff again filed a grievance with the union and contacted the EEO, but insists that neither assisted him.  Afterwards, Plaintiff was transferred to the Payment Operations Departments, allegedly in retaliation for

making these reports.  Although he was then notified about an open position in a different division and recommended for it, Plaintiff says he was "advised . . . that senior management 'point blank' refused to give [him] the position."  *Id.* ¶ 31.

In September 2016, Plaintiff claims that Assistant Commissioner Leslie Zimmerman and Manager Linda Levine were training employees on how to use a new computer operating system, but they refused to include him in the training.  Plaintiff reported this to Levine, after which she "became angry with [him] and told other employees that Mr. Anderson 'confronted her.'"  *Id.* ¶ 32.  In reference to Plaintiff, Zimmerman also allegedly said that "[h]is friends don't talk to him anymore because of what he did."  *Id.*

Finally, Plaintiff alleges a series of incidents from June 2017 to February 2018. He first asserts that he was denied overtime compensation during this period.  In addition, as of July 1, 2017, Zimmerman or Levine was required to approve request for overtime opportunities – a "method [that] permitted Defendant to ensure that [Plaintiff] was denied overtime."  *Id.* ¶ 34.  Plaintiff also alleges that a number of his co-workers made negative comments about him.  On July 26, 2017, at a company party, referring to Plaintiff's lawsuit, Zimmerman purportedly said, "Some want to go to a hotel, while some want to run to the bank."  *Id.* ¶ 35.  On February 9, 2018, Leslie said to Plaintiff that "[t]he commissioner told me not to expect any miracles," and then one week later she said to him, "[t]hat is blood money."  *Id.* ¶¶ 36-37.  Plaintiff also alleges that on February 26, 2018, another co-worker asked him, "What are you doing here mother fucker?"  *Id.* ¶ 37. Finally, on February 20, 2018, Plaintiff alleges that Leslie and Keith "attempted to photograph [him]."  *Id.* ¶ 38.

On August 26, 2019, Plaintiff filed this action.  *See* Dkt. 1.  Defendant filed the present motion to dismiss on December 12, 2019, which Plaintiff opposed.  *See* Dkt. 8, 13.

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold."  *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (citations omitted).  In answering this question, the Court must "accept[] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as factual allegations.'"  *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (citation omitted).

## DISCUSSION

### I.  Section 1981 Claim

Plaintiff first alleges that his rights were deprived in violation of 42 U.S.C. § 1981, which provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]"  42 U.S.C. § 1981(a); *see* Compl. ¶¶ 42-51. Plaintiff specifically contends that "Defendant interfered with [his] right to contract the

sale of his labor by denying him the equal opportunity to apply for a position and advance within his employment, denying him the same training it afforded to other comparators, and by suspending [him] without just cause."  Compl. ¶ 49.

Plaintiff's § 1981 claim must be dismissed.  Section 1981 does not provide a private cause of action against a state actor, as Defendant is here.  In 1989, the Supreme Court held that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989). Recently, the Second Circuit affirmed that *Jett* remains the law: "[Section] 1981 does not provide a separate private right of action against state actors."  *Duplan v. City of New York*, 888 F.3d 612, 620-21 (2d Cir. 2018) ("[W]e now join the strong consensus of our sister Circuits in rejecting [the plaintiff's] argument and reaffirming *Jett*'s ongoing viability."); *see also Beharry v. City of New York*, No. 18-CV-2042 (AJN), 2019 WL 634652, at *3 (S.D.N.Y. Feb. 14, 2019) (dismissing a § 1981 claim brought against a state actor in light of *Duplan*); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011) ("When the defendant is a state actor, Section 1983 is the exclusive remedy for violations of rights guaranteed under Section 1981.").

## II.    Title VII Claims

Plaintiff alleges racial discrimination, retaliation, and hostile work environment claims under Title VII, 42 U.S.C. § 2000e, spanning from 2005 to February 2018.  The Court considers each of these claims in turn.  The Court first, however, addresses the threshold issue of whether any – and, if so, which – of Plaintiff's allegations are time-barred and thus not permissible to review when analyzing his Title VII claims.

### A. Continuing Violations Doctrine

In order to pursue a Title VII claim, a plaintiff must file a discrimination charge with the EEOC within 300 days of the alleged discriminatory action. *See* 42 U.S.C. § 2000e-5(e); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996) ("This statutory requirement is analogous to a statute of limitations."). The parties agree that Plaintiff filed his initial charge of discrimination with the EEOC on August 24, 2017, *see* Dkt. 9, Ex. 2 (EEOC Verified Complaint & Notice of Charge of Discrimination), and that October 28, 2016 is therefore the 300-day outer limit for considering alleged discriminatory conduct. *See* Def.'s Mot. at 3; Pl.'s Opp. at 5 ("Defendant accurately calculates that three hundred days before August 24, 2017 was October 28, 2016."). Plaintiff nonetheless contends that the continuing violations doctrine applies here, permitting the Court to review all of his allegations dating from 2005 through February 2018, *see* Compl. ¶¶ 14-39. *See* Pl.'s Opp. 4-7.

Pursuant to the continuing violations doctrine, "a plaintiff who files a timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination extends the limitations period for all claims of discriminatory acts committed under that policy even if those acts, standing alone, would have been barred by the statute of limitations." *Lightfoot v. Union-Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997). To invoke this doctrine, "there must have been an actionable adverse employment action within the limitations period." *Almontaser v. N.Y.C. Dep't of Educ.*, No. 13-CV-5621, 2014 WL 3110019, at *5 (E.D.N.Y. July 8, 2014). In addition, a plaintiff must demonstrate that the alleged conduct is part of "an ongoing policy of discrimination" and does not consist of "discrete incidents of

discrimination," which do not fall within the scope of the continuing violations doctrine. *Little v. NBC*, 210 F. Supp. 2d 330, 366 (S.D.N.Y. 2002); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'").

Plaintiff first argues that all of the alleged conduct – that is, prior to and after October 26, 2018 – were part of "an intense series of discriminatorily successive acts [which] permits this courts to apply the continuing violation doctrine." Pl.'s Opp. at 5; *see also id.* at 6 (arguing that he "has adequately alleged a single and continuous stream of unlawful conduct extending into the limitations period"). The Court disagrees. Plaintiff fails to plausibly allege that the incidents he cites were part of any continuing policy or practice of discrimination. Rather, the conduct seems to clearly constitute "discrete incidents" of purported discrimination. *Little*, 210 F. Supp. 2d at 366.

First, the alleged conduct took place over a span of thirteen years, with almost two years between each of the incidents. Furthermore, these "alleged acts are sufficiently isolated in time (usually from each other, and at least from the timely allegations) as to break the asserted continuum of discrimination." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998). Second, throughout this time, Plaintiff worked in various divisions of the Department of Finance and under different supervisors. As to nearly every incident, Plaintiff alleges that a different manager or co-worker was the source of the discrimination. Finally, Plaintiff alleges he was subject to discrimination in several different forms – ranging from the failure to promote him or to compensate him for overtime to being repeatedly transferred and the target of negative comments. Yet, "[i]t

is well-established that transfers, demotions, failure to compensate adequately, and

failure to promote do not constitute a continuing violation." *Little*, 210 F. Supp. at 368;

*see also Malarkey v. Texaco, Inc.*, 559 F. Supp. 117, 121 (S.D.N.Y. 1982) ("Completed

acts such as a termination through discharge or resignation, a job transfer, or

discontinuance of a particular job assignment, are not acts of a 'continuing' nature.").  As

one court in this district noted, this is particularly true when "the allegedly retaliatory acts

were taken by persons in different departments." *Little*, 210 F. Supp. at 368.  Nor does

Plaintiff offer a viable argument as to why his "claims are not separate and distinct,"

instead only making the generalized assertion that the incidents are "sufficiently similar .

. . to justify the conclusion that all acts were part of a single discriminatory practice."

Pl.'s Opp. at 6.

      The circumstances alleged here are similar to those in *Little v. NBC*, 210 F. Supp.

2d 330 (S.D.N.Y. 2002), where the court also considered whether to apply the continuing

violations doctrine.  Rejecting the doctrine's application, the court noted that the

"allegations involve different co-workers and supervisors, in different time periods and

on different shows" – all facts that exist here. *Id.* at 368.  "These differences," the court

explained, "preclude invocation of the continuing violation doctrine." *Id.*  Plaintiff, by

contrast, argues that he is in a similar position to the plaintiff in *Fitzgerald v. Henderson*,

where the Second Circuit affirmed the application of the continuing violations doctrine.

251 F.3d 345 (2d Cir. 2001).  But this contention is unavailing.  Unlike in *Fitzgerald*,

where the alleged incidents of harassment were "related" because they were committed

by one supervisor and occurred over a short period of time, such facts are not present

here. *Id.* at 262-63.

Plaintiff next asserts that the continuing violations doctrine applies because "[a] continuing violation may be found where 'specific and related instance of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" Pl.'s Opp. at 6 (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)).  He argues that the discrimination began in 2005 and continued for many years without any intervention by Defendant even though he filed several complaints, each of which "was specifically premised on race discrimination and retaliation," with an EEO officer, as well as grievances with the union.  Pl.'s Opp. at 6. But this attempt to fit within the scope of the doctrine also fails.  For this argument to be successful, Plaintiff must allege "*related* instances of discrimination" over the thirteen-year period.  *Cornell*, 23 F.3d at 704 (emphasis added).  As discussed in detail above, the alleged conduct is not plausibly related other than the fact that the incidents took place when Plaintiff was working for Defendant.

Accordingly, the Court here denies Plaintiff's request to apply the continuing violations doctrine.  It will therefore only consider conduct that is alleged to have taken place on or after October 28, 2016.

**B. Discrimination**

Plaintiff first alleges that he was subject to racial discrimination in violation of Title VII.  The Court will consider the following allegations: (1) Defendant's failure to compensate Plaintiff for overtime hours worked from June 2017 through 2018; (2) Defendant's denial of overtime opportunities to Plaintiff as of July 1, 2017; (3) comments made to Plaintiff in July 2017 and February 2018; and (4) the attempt by two co-workers to photograph him in February 2018.  *See* Compl. ¶¶ 33-39.

To make a *prima facie* case of racial discrimination, a plaintiff must show that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).  At the initial pleading stage, "[t]he facts . . . in the complaint need not give plausible support to the ultimate question of whether the employment action was attributable to discrimination.  They need only give plausible support to a minimal inference of discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).  Defendant does not dispute that Plaintiff was a member of a protected class and qualified for the relevant positions.  Rather, Defendant contends that the majority of the allegations do not constitute adverse employment actions and, even if any or all do, the allegations do not give rise to an inference of discrimination.

The Court first concludes that most of Plaintiff's timely allegations do not constitute adverse employment actions.  For purposes of this motion, Defendant concedes that the denial of overtime pay or opportunities are adverse actions, but disputes that the comments made to Plaintiff on February 9, 14, and 26, 2018 and the attempt to photograph him on February 20, 2018 can also be deemed adverse actions.  *See* Def.'s Mot. at 7; *see also Terry v. Ashcroft*, 336 F.3d 128, 139 (2d Cir. 2003) (holding that the failure to promote an employee can constitute an adverse employment action).  The Court agrees.

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya*, 202 F.3d at 640; *see also Terry*, 336 F.3d at 138  ("An 'adverse employment action' is one

which is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" (citation omitted)).  Examples of adverse employment actions include the "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  *Vega*, 801 F.3d at 85.

The four remarks that Plaintiff alleges were made to him in July 2017 and February 2018 do not plausibly constitute adverse employment actions.  Nowhere does Plaintiff demonstrate how these comments resulted in a material change to his employment.  At most, these comments were stray remarks made to or "mere inconvenience[s]" for Plaintiff.  *Terry*, 336 F.3d at 138.  Moreover, it is well settled among courts in this circuit that these types of comments do not rise to the level of an actionable adverse employment action.  *See, e.g.*, *LeeHim v. N.Y.C. Dep't of Educ.*, No. 17-CV-3838 (PAE), 2017 WL 5634128, at *4 (S.D.N.Y. Nov. 21, 2017) (holding that comments, including being "'shushed' by a peer," being "criticized . . . as 'not a team player' and 'too aggressive,'" and "attacked by [a co-worker] in a 'profane and angry tirade'" do not rise to the level of an adverse employment actions); *Trachtenberg v. Dep't of Educ. of City of N.Y.*, 937 F. Supp. 2d 460, 467 (S.D.N.Y. 2013) ("[E]xcessive scrutiny do[es] not constitute adverse employment action in the absence of other negative results, such as a decrease in pay or being placed on probation."); *Hall v. N.Y.C. Dep't of Transp.*, 701 F. Supp. 2d 318, 335-36 (E.D.N.Y. 2010) ("[E]ven assuming that plaintiff was subjected to criticism and reprimands, where, as here, such conduct did not lead to materially adverse employment consequences, it is not considered actionable disparate treatment."); *Katz v. Beth Israel Med. Ctr.*, No. 95-CV-7183 (AGS), 2001 WL 11064, at

*14 (S.D.N.Y. Jan. 4, 2001) ("Being yelled at . . . do[es] not rise to the level of adverse employment actions[.]").

Nor does Plaintiff's allegation that "Leslie and Keith attempted to photograph [him]" constitute an adverse employment action. Compl. ¶ 38. Again, the complaint contains no mention of how this conduct impacted Plaintiff in a material way in his employment. *See Trachtenberg*, 937 F. Supp. 2d at 467 (holding that a co-worker's "habit of 'stand[ing] in the area and star[ing] at [plaintiff] in an effort to intimidate her'" does not constitute an adverse employment action). The Court will not infer a material effect on Plaintiff when no such allegations are made. As such, the Court concludes that the only allegations rising to the level of adverse employment actions are the denial of overtime compensation and overtime opportunities in 2017 and 2018.[2]

Nevertheless, even as to these two adverse employment actions, Plaintiff fails to plausibly allege that he was denied overtime compensation and overtime opportunities due in some way to racial discrimination. For Title VII discrimination claims, the "motivating factor" standard applies. *See Vega*, 801 F.3d at 86 ("[A] plaintiff in a Title VII case need not allege 'but-for' causation."). In other words, the inquiry is "whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' *i.e.*, a discriminatory reason." *Id.* at 87.

Plaintiff states that he "has established an inference of discrimination through

---

[2] Plaintiff barely attempts to argue in his opposition that his allegations in 2017 and 2018 were adverse employment actions, focusing instead on defending the time-barred allegations. At most, Plaintiff asserts that "the ongoing remarks made to [Plaintiff] amount to more than petty slights and trivial remarks." Pl.'s Opp. at 11-12. But this conclusory statement does not articulate how Plaintiff suffered a "'materially adverse change' in the terms and conditions of [his] employment" as a result of those comments. *Galabya*, 202 F.3d at 640 (citation omitted).

direct evidence of discriminatory intent and by circumstantial evidence[.]"  Pl.'s Opp. at

13.  The Court, however, finds no direct evidence of discriminatory intent alleged in the

complaint.  The only relevant allegations are conclusory assertions that the denial of

overtime pay and opportunities were motivated by racial discrimination.  However,

"[n]aked assertions of race discrimination . . . without any specific [factual] allegation of

a causal link between the [d]efendants' conduct and the [p]laintiff's [protected

characteristic]" are insufficient.  *Sanders-Peay v. N.Y.C. Dep't of Educ.*, No. 14-CV-

4534, 2014 WL 6473507, at *3 (E.D.N.Y. Nov. 18, 2014); *see also Patane v. Clark*, 508

F.3d 106, 112 (2d Cir. 2007) (affirming dismissal of a Title VII gender discrimination

claim where the complaint failed to "set forth any factual circumstances from which a

gender-based motivation for such an action might be inferred").

       Nor does Plaintiff's reliance on circumstantial evidence adequately plead

discriminatory intent here.  Throughout the complaint, Plaintiff suggests that he was

treated differently than other employees and that "Defendant subjected him to adverse

employment actions by subjecting him to disparate treatment in the terms and conditions

of his employment as compared to similarity situated non-African American employees

without regard to their race."  Pl.'s Opp. at 9-10.  Although "[a] showing of disparate

treatment – that is, a showing that the employer treated plaintiff 'less favorably than a

similarly situated employee outside his protected group' – is a recognized method of

raising an inference of discrimination for purposes of making out a *prima facie* case,"

Plaintiff has not made that showing here.  *Sotomayor v. City of New York*, 862 F. Supp.

2d 226, 254 (S.D.N.Y. 2012) (citation omitted).

       To viably plead a disparate treatment theory, Plaintiff "must show []he was

similarly situated in all material respects to the individuals with whom []he seeks to

compare herself." *Id*.  However, as to the allegations that Plaintiff was denied overtime

compensation and opportunities, the complaint does not even mention a comparator.[3]

Plaintiff only generally – and insufficiently – asserts that "Defendant treated [him]

differently as compared to similarly-situated non-African American employees."  Compl.

¶ 41.  In his opposition, Plaintiff offers nothing more specific, once again broadly stating

that "Defendant's disparate treatment of [Plaintiff] can only be explained by a

discriminatory animus due to his race due to the preferential treatment afforded to non-

African American employees."  Pl.'s Opp. at 10.  Without alleging a single comparator as

to these allegations, Plaintiff falls well short of satisfying the disparate treatment standard

"requir[ing] a reasonably close resemblance of the facts and circumstances of [P]laintiff's

and comparator's cases."  *Trachtenberg*, 937 F. Supp. 2d at 471.

As such, while Plaintiff pleads two adverse employment actions, he fails to

plausibly allege that discriminatory animus played a role in either of those actions.  *See*

*LeeHim*, 2017 WL 5634128, at *7 ("[C]ourts will refuse to find an inference of

discrimination absent some direct contextual link to a protected characteristic.").

## C.  Retaliation

 Plaintiff next alleges that he suffered retaliation in violation of Title VII.

Retaliation claims under Title VII are analyzed under the same framework as

discrimination claims.  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d

Cir. 2010).  "To establish a prima facie case of retaliation, [a plaintiff] must show (1) that

---

[3] Significantly, the complaint also does not even allege when or how Plaintiff was denied
overtime compensation or opportunities other than generally stating that this took place in 2017
and 2018.  *See* Compl. ¶¶ 33-34.

she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action."[4]  *Id.* at 110.  Unlike discrimination claims however, retaliation under Title VII requires application of a "but-for" causation standard.  *See Vega*, 801 F.3d at 90 ("Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action.").

The prior section's discussion as to which allegations may rise to the level of adverse employment actions is equally applicable here.  For the reasons stated above, only the alleged denial of overtime compensation and overtime opportunities plausibly constitute adverse employment actions, such that they would have "dissuaded [Plaintiff] from making or supporting a charge of discrimination as a result."  *Mabry v. Neighborhood Def. Serv.*, 769 F. Supp. 2d 381, 398 (S.D.N.Y. 2011).

But because Plaintiff's allegations regarding these two adverse employment actions did not satisfy the lesser "motivating factor" standard for Title VII discrimination claims, they cannot plausibly satisfy retaliation's more stringent "but-for" causation standard.  Notably, nowhere in the complaint does Plaintiff allege that his report to Levine – the relevant protected activity here – was a but-for cause of him being denied either overtime compensation or opportunities.

---

[4] For purposes of this motion, Defendant has "presume[d] that Plaintiff intends to plead that his complaint to Levine and Zimmerman [in 2016] about their failure to train him on the operating system was a protected activity."  Def.'s Mot. at 15; *see also* Compl. ¶ 32.  The Court accepts this assertion and thus presumes for purposes of this motion that Plaintiff has plausibly alleged that he engaged in protected activity.  It notes, however, that Plaintiff's other alleged protected activities all took place prior to October 28, 2016, and thus are time-barred.

Even if Plaintiff were to try to rely on temporal proximity to establish a causal connection between his report to Levine in 2016 and the subsequent denial of overtime compensation and opportunities in 2017 and 2018, that too would be unavailing.  While "[m]ere temporal proximity between a plaintiff's protected activity and an adverse employment action is sufficient to create an inference of retaliation for purposes of proving a *prima facie* case, . . . the intervening period must be 'very close.'"  *Bagley v. J.P Morgan Chase & Co.*, No. 10-CV-1592 (PGG), 2012 WL 2866266, at *9 (S.D.N.Y. July 12, 2012).  Here, the protected activity and adverse conduct are not sufficiently close.  Plaintiff does not state exactly when he complained to Levine about being denied the computer training, but the Court will assume it took place shortly after September 2016 when that training took place.  *See* Compl. ¶ 32.  According to Plaintiff, however, he was not denied overtime compensation and overtime opportunities until at least June and July 2017, respectively.  *Id.* ¶¶ 33-34.  As such, approximately nine months took place between the relevant protected activity and adverse employment actions, which is significantly more time than courts typically permit to establish temporal proximity.  *See Uddin v. City of New York*, 427 F. Supp. 2d 414, 434 (S.D.N.Y. 2006) ("Any alleged actions that took place more than nine months after the last alleged protected activity . . . are too remote to establish a causal connection.").

Therefore, Defendant's motion to dismiss the Title VII retaliation claim is also granted.

### D.  Hostile Work Environment

Finally, Plaintiff alleges a hostile work environment claim under Title VII.  "In order to establish a hostile work environment claim under Title VII, a plaintiff must

produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and can create an abuse working environment.'" *Gorzynski*, 596 F.3d at 102.  This claim "requires evidence not only that the victim subjectively perceived the environment to be hostile or abusive, but also that the environment was objectively hostile and abusive."  *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003).  A court is to consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010) (emphases removed).

Unlike the previously discussed discrimination and retaliation claims, when reviewing this hostile work environment claim, the Court must consider all of the allegations in the complaint – from 2005 to 2018.  In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court explained that, "[i]n determining whether an actionable hostile work environment claim exists, we look to 'all the circumstances,'" thus "a court may, for the purposes of determining liability, review all such conduct, including those acts that occur outside the filing period."  536 U.S. at 116 ("It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period."); *see also Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir. 2001) (requiring a court to evaluate the whole record and "the totality of the circumstances").

Nonetheless, Plaintiff fails to plausibly plead a hostile work environment claim.

Although Plaintiff does allege a range of conduct over thirteen years – from being suspended and losing pay, denied promotions, repeatedly transferred, and excluded from a training, to receiving negative comments from supervisors and co-workers, *see* Compl. ¶¶ 19, 21, 32-39 – these incidents are insufficiently "continuous and concerted in order to be deemed pervasive."  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citation omitted).  Rather, as previously discussed, Plaintiff's allegations are more akin to isolated incidents that occurred throughout his nearly two-decade tenure working for Defendant. *See id.* (explaining that "incidents must be more than 'episodic'" to support a work environment claim).  Each alleged incident took place at least two years apart, while Plaintiff worked in various departments and under different supervisors.  Nor is the alleged conduct sufficiently severe so as to overcome its episodic nature.  For instance, "[s]imple teasing" or "offhand comments" do not support a hostile work environment claim.  *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004).

But even assuming *arguendo* that the conduct alleged was sufficiently severe, Plaintiff still has not plausibly demonstrated that he suffered these actions as a result of his race.  "The dispositive principle here is that the hostility must be 'discriminatory' – that is, based on race (or some other unlawful factor)."  *Henderson v. City of New York*, 818 F. Supp. 2d 573, 581 (E.D.N.Y. 2011).  As explained earlier in the discrimination section, the complaint is devoid of any allegations tying the alleged conduct to racial animus.  To satisfy such a claim, Plaintiff must do more than make generalized assertions.  Thus, the hostile work environment claim is also dismissed.

## III.    Section 1983 Claim

Finally, Plaintiff asserts that his rights under 42 U.S.C. § 1983 were violated

because the City of New York, sued herein as the Department of Finance, "engaged in [a] custom that denied [Plaintiff] his equal protection constitutional rights."[5]  Compl. ¶ 57. Plaintiff does not specify what was the alleged custom.  Based on the pleadings as a whole, however, the Court assumes that Plaintiff is broadly asserting that Defendant engaged in a custom of racial discrimination and unlawful retaliation.  *See id.* ¶¶ 56-57.

Under § 1983, a municipality cannot be held vicariously liable for the acts of its employees.  *See Coon v. Town of Springfield*, 404 F.3d 683, 686-87 (2d Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  Therefore, a successful § 1983 claim against a municipal entity requires a plaintiff to plead (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *See Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985); *see also Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (requiring that a § 1983 claim be premised on the theory that the municipal actor's allegedly unconstitutional "acts were performed pursuant to a municipal policy or custom").  "[A] plaintiff must allege facts – not merely conclusory assertions – that 'tend[] to support, at least circumstantially, an inference that such a municipal policy or custom exists.'"  *Daniels v. City of New York*, No. 18-CV-3717 (RA), 2019 WL 1437586, at *4 (S.D.N.Y. Mar. 31, 2019) (citation omitted).

This claim must also be dismissed.  The complaint is devoid of any factual

---

[5] In reviewing Plaintiff's § 1983 claim, the Court may only consider allegations in the complaint occurring on or after August 26, 2016 – three years from the date on which this action was filed.  *See Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) ("The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law."); *see also Bermudez*, 783 F. Supp. 2d at 573 ("[Plaintiff's] claims under Section 1983 . . . are subject to a three-year statute of limitations.").  For the same reasons previously discussed regarding the Title VII claims, the Court here too rejects the application of the continuing violations doctrine.

allegations regarding a custom or policy of unlawful discrimination or retaliation within the Department of Finance.  Most significantly, Plaintiff does not state anywhere in the complaint what custom he believes to have violated his rights under § 1983.  The Court is thus left to infer, based on the complaint as a whole, that the alleged custom is one of discrimination and retaliation.  Even inferring that much, there is nothing in the complaint suggesting that the alleged discriminatory and retaliatory conduct that Plaintiff suffered was a result of a municipal custom.  Rather, the complaint is better described as pleading isolated incidents directed at Plaintiff.  Therefore, pursuant to this circuit's case law, this § 1983 claim cannot withstand Defendant's motion to dismiss.  As the Second Circuit has noted, "[t]he mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."  *Dwares v. City of New York*, 985 F.2d 94, 100 (2d. Cir. 1993); *see also Brodeur v. City of New York*, No. 99-CV-651 (WHP), 2002 WL 424688, at *6 (S.D.N.Y. Mar. 18, 2002) (concluding that it is inadequate to "flatly assert[] that the City had a policy" without making any "specific factual allegations").

In his opposition, Plaintiff now contends that he "has pled and proven that Defendant lacks any discrimination policy that requires its employees' complaints to be properly investigated and adequately addressed."  Pl.'s Opp. at 20 ("Defendant maintains no policy to combat discrimination which has denied [Plaintiff] any due process of his constitution right.").  Even assuming the complaint could be read to make such an allegation, it too would fail.  Plaintiff offers no facts to support this assertion that his EEO complaints and union grievances were not properly investigated or addressed because of a municipal custom or policy.  *See, e.g.*, *Plair v. City of New York*, 789 F. Supp. 2d 459,

469 (S.D.N.Y. 2011) (explaining that "boilerplate allegations of unconstitutional policies and practices" do not suffice to allege a *Monell* claim).

Accordingly, Plaintiff's § 1983 claim is also dismissed.

## IV.   State & Municipal Claims

Finally, Plaintiff brings claims of discrimination and retaliation under state and municipal law.   *See* Compl. ¶¶ 75-109.   Federal district courts have supplemental jurisdiction over non-federal law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."   28 U.S.C. § 1367(a).   But a district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction."   *Id.* § 1367(c)(3).   "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."   *Valencia ex rel. Franco v. Lee*, 316 .3d 299, 305 (2d Cir. 2003).

Here, the Court has already granted Defendant's motion to dismiss as to all of the federal claims.   Because the Court addressed and dismissed these claims early in the litigation, declining jurisdiction over the remaining state and municipal claims would not disserve the principles of judicial economy, convenience, or fairness.   For this reason, the Court declines to exercise supplemental jurisdiction.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is granted in its entirety.

Should Plaintiff choose to amend, he shall file the amended complaint no later than May

21, 2020, if he has a good faith to do so.  The Clerk of Court is respectfully directed to

terminate the motion pending at docket entry 8.

Dated:    April 21, 2020
        New York, New York

_____

Ronnie Abrams
United States District Judge